IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Traci Holder,<br><br>                Plaintiff,<br><br>vs.<br><br>Metropolitan Life Insurance Company,<br><br>                Defendant. | C.A. No.:  6:21-CV-00490-DCC<br><br>**OPINION & ORDER** |

The matter is before the Court for review of the claim administrator's decision to deny long-term disability benefits to Plaintiff Traci Holder under the American Airlines, Inc. Long-Term Disability Plan (the "Plan") governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.  Defendant Metropolitan Life Insurance Company ("MetLife") is the designated claims administrator for the Plan and as such, an ERISA fiduciary.  Additionally, MetLife serves as the third-party administrator for the Plan's eligibility determinations.

Holder seeks long-term disability benefits pursuant to 29 U.S.C. §1132(a)(1)(B). ECF Nos. 1 ¶ 3.  The parties have filed a joint stipulation and memoranda in support of judgment pursuant to the Court's Specialized Case Management Order for ERISA benefits cases.  The parties agree that the Court may dispose of this matter consistent with the joint stipulation and memoranda.  ECF No. 15 ¶ 8.  For the reasons set forth below, the Court affirms MetLife's denial of long-term disability benefits.

**F**ACTUAL AND **P**ROCEDURAL **H**ISTORY

Holder was employed with American Airlines, Inc. ("American Airlines").  ECF Nos. 1 ¶ 4; 6 ¶ 4.  As an employee with American Airlines, Holder had the opportunity to enroll

1

for optional short-term disability insurance ("STD") coverage and long-term disability ("LTD") Plan coverage. ECF No. 15-10 at 210. To enroll in STD and LTD coverages with American Airlines, Holder was required to submit proof of good health to MetLife. *Id.* at 311. Proof of good health is determined based on information supplied in a Statement of Health ("SOH") form. *Id.* at 13, 217. For coverage requiring proof of good health, coverage becomes effective only after MetLife approves the SOH form and the participant pays the first contribution for coverage. *Id.* at 51.

Holder first submitted a SOH form for STD and LTD coverage on December 10, 2015. ECF No. 15-5 at 29–34. By letters dated January 5, 2016, MetLife denied STD and LTD coverage because of Holder's history of depression. ECF No. 15-1 at 13–16. Holder submitted a second SOH form for STD and LTD coverage on November 2, 2017. *Id.* at 19–30. By letter dated November 2, 2017, MetLife denied LTD coverage because of Holder's height to weight ratio. *Id.* at 17–18. Thereafter, Holder submitted a third SOH form on November 27, 2017. *Id.* at 32–40. Holder marked "no" on the third SOH form where it asked whether Holder had previously been declined for disability insurance. *Id.* at 20, 34. By letter dated February 1, 2018, MetLife approved Holder's request for STD coverage through American Airlines. ECF No. 15-7 at 40.

Holder ceased working effective March 13, 2019, and filed a claim for STD benefits. ECF Nos. 17 at 1; 15-8 at 197–98. MetLife approved Holder's claim for STD benefits until October 4, 2019. *Id.* After Holder received her STD benefits, Holder was denied LTD benefits because MetLife determined Holder did not have LTD coverage. ECF No. 15-10 at 32–33. After receiving Holder's appeal request, by letter dated April 9, 2020, American Airlines advised Holder that the Employee Benefits Committee ("EBC")

conducted an extensive review and decided to allow Holder to proceed with a request to enroll in LTD coverage retroactive to January 1, 2019, pending a review of an updated SOH form.  ECF No. 15-4 at 16.  In accordance with American Airlines' letter, Holder submitted another SOH form dated April 14, 2020.  ECF Nos. 15-1 at 46; 15-2 at 2–7.  By letter dated April 16, 2020, MetLife denied Holder's request for LTD coverage under the Plan based on Holder's history of depression.  ECF No. 15-1 at 41–42.

On April 23, 2020, Holder submitted a letter to MetLife from her physician to dispute MetLife's denial of LTD coverage.  ECF No. 15-2 at 8–9.  By letter dated June 2, 2020, MetLife informed Holder that it could not approve her request for LTD coverage.  ECF No. 15-3 at 97–98.  MetLife's decision was based on Holder's history of generalized anxiety disorder, chronic pain, lumbago with sciatica, Raynaud's disease, and gastric sleeve surgery.  *Id.*

In this action, Holder asserts that MetLife approved her request for LTD coverage by letter dated February 8, 2018.  ECF Nos. 1 ¶ 5; 15-4 at 82.  However, MetLife claims that it has no record of this letter.  ECF No. 15-9 at 59.  Furthermore, there is no evidence that American Airlines had any record of the letter.  ECF No. 18 at 4.  MetLife's Informational Technology Department has no record of the letter approving LTD coverage ever being created or sent to Holder.  ECF No. 15-6 at 133–39.  MetLife's call logs note that Holder contacted MetLife in October 2019 and asked if the STD and LTD approval letters would look identical.  ECF Nos. 15-6 at 133–39; 15-10 at 34.  Thereafter, Holder provided MetLife with notice of the letter approving LTD coverage.  ECF No. 15-9 at 59.

*Relevant Plan Terms*

The relevant provisions in the American Airlines, Inc. Summary Plan Description ("SPD"), as stipulated by the parties, are set forth below.

> **Proof of Good Health or Statement of Health (also referred to as Evidence of Insurability or EOI)**
>
> Some benefit plans require you to provide proof of good health when you enroll for coverage at a later date (if you do not enroll when you are first eligible), or when you increase levels of coverage. Proof of good health (or a Statement of Health) is a form you must complete and return to the appropriate benefit Plan Administrator when you enroll in the Long Term Care Insurance Plan or increase levels of Life Insurance.
>
> Coverage amounts will not increase nor will you be enrolled in these coverages until the Plan Administrator approves your Statement of Health Form and you pay the initial/additional contribution for coverage.

ECF No. 15-10 at 311.

> Proof of good health is determined based on the information you supply in the Statement of Health. For coverage requiring proof of good health, coverage becomes effective only after MetLife approves your Statement of Health and your first contribution is paid, either by you or through payroll deductions.

*Id.* at 51.

> **Definition of Total Disability**
> During the elimination period and the first 24 months for which LTD Plan benefits are payable, you are considered totally disabled if you are not gainfully employed in any type of job for wage or profit and are unable to perform major and substantial duties of your own occupation because of sickness or accidental bodily injury.

*Id.* at 217.

> LTD Plan coverage provides you protection during . . . extended absences. . . . You pay the cost of LTD Plan benefits through payroll deductions with after-tax contributions. If you choose not to enroll when you are first eligible and later decide to enroll, proof of good health is required.

*Id.*

4

*Claim History*

Holder asserts that she attempted to initiate a claim for LTD benefits, but was informed that she did not have LTD coverage. *See* ECF No. 19 at 2. Holder does not dispute that she did not pay any premiums for LTD coverage. *See id.* at 1. Holder does not dispute that she did not file a claim for LTD benefits pursuant to the terms of the SPD. *See id.* at 2. Holder argues that she was unable to file a claim for LTD benefits because of MetLife's position that she did not have LTD coverage. ECF No. 17at 1–2. Holder's sole argument is that she is entitled to LTD benefits under ERISA as a result of the LTD coverage approval letter on February 8, 2018. *Id.* However, as set forth above, MetLife did not approve Holder for LTD coverage and denies that it created or issued this LTD coverage approval letter.

The parties agree that the substantive issue before the Court is whether Holder was enrolled in the Plan and, therefore, eligible to apply for and receive LTD benefits under the Plan. ECF No. 15 ¶ 7. Holder claims that MetLife is bound by a LTD coverage determination on February 8, 2018, such that MetLife should be required to process Holder's long-term disability claim on its merits. *Id.* MetLife claims that Holder was never enrolled in the Plan, never submitted a claim for LTD benefits and, therefore, is not eligible for the relief sought in her Complaint. *Id.*

*Procedural History*

MetLife's denial of Holder's LTD coverage became final on September 14, 2020. ECF No. 15-3 at 108–09. Holder filed the instant action on February 17, 2021. ECF No. 1. On November 3, 2021, the parties filed a joint stipulation. ECF No. 15. The parties filed memoranda in support of judgment on November 3, 2021. ECF Nos. 16, 17. On

5

November 8, 2021, the parties replied. ECF Nos. 18, 19. This matter is now ripe for consideration.

## DISCUSSION OF THE LAW

*Standard of Review*

The parties agree that to the extent a benefit determination was made, the standard of review is under the abuse of discretion standard. ECF Nos. 16 at 9–11; 17 at 12–13. Judicial review of an ERISA administrator's benefit determination is for abuse of discretion if the plan confers discretionary authority on the administrator. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *accord Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008). Here, MetLife serves as claims administrator for the Plan. The LTD benefits are self-funded under the American Airlines, Inc. Long-Term Disability Plan. *See Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 152 (4th Cir. 1996) ("There are two primary kinds of ERISA plans for health coverage: (1) employer-funded plans, where the 'insurance company' acts merely as a processor and independent fiduciary administrator of the plan, and (2) insurer-funded plans, where, in exchange for a premium from the employer, the insurer processes and pays claims *and* acts as plan administrator.").

The SPD grants the following discretionary authority to the Pension Benefits Administration Committee ("PBAC"), the Plan administrator:

> The administration of the Plans shall be under the supervision of the Plan Administrator. The Employer hereby grants the PBAC authority to administer and interpret the terms and conditions of the Plans and the applicable legal requirements related thereto. It shall be a principal duty of the PBAC to see the administration of the Plans is carried out in accordance with its terms, for the exclusive purpose of providing benefits to Participants and their beneficiaries in accordance with the documents and instruments governing the Plans. The PBAC will have full power to administer the Plans

6

in all of their details, subject to the applicable requirements of law. For this purpose, the PBAC's powers will include, but will not be limited to, the following discretionary authority, in addition to all other powers provided by the Plans:

- To make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plans, including the establishment of any claims procedures that may be required by applicable provisions of law and to request extension of time periods hereunder and request additional information

- To interpret and construe the terms of the Plans, their interpretation thereof in good faith to be final and conclusive upon all persons claiming benefits under the Plans

- To decide all questions concerning the Plans, and to determine the eligibility of any person to participate in or receive benefits under the Plans and to determine if any exceptional circumstances exist to justify any extensions

- To compute the amount of benefits that will be payable to any Participant or other person, organization or entity, to determine the proper recipient of any benefits payable hereunder and to authorize the payment of benefits, all in accordance with the provisions of the Plans and the applicable requirements of law

- To appoint such agents, counsel, accountants, consultants and actuaries as may be required to assist in administering the Plans

- To allocate and delegate its responsibilities under the Plans and to designate other persons to carry out any of its responsibilities under the Plans, any such action to be by written instrument and in accordance with ERISA Section 405

- To delegate its authority to administer Claims for benefits under the Plans by written contract with a licensed third party administrator

- To the extent permitted by law, to rely conclusively upon all tables, valuations, certificates, opinions and reports that are furnished by accountants, counsel or other experts employed or engaged by the PBAC

ECF No. 15-10 at 271. Under the Plan, the PBAC delegated its discretionary authority to administer disability claims to MetLife. *Id.*. As the claims administrator, MetLife receives disability claim forms for the determination of disability under the Plan. *Id.* at 210–12. The parties agree that the foregoing language is sufficient so as to confer discretionary authority upon MetLife. ECF No. 15 ¶ 3.

Because the Plan confers MetLife with discretionary authority to interpret the terms of the Plan and to determine eligibility under the terms of the Plan, MetLife's determination should only be overturned upon a finding that MetLife abused its discretion. *Bruch*, 489 U.S. at 114; *Helton v. AT&T Inc.*, 709 F.3d 343, 351 (4th Cir. 2013); *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629-30 (4th Cir. 2010); *Booth v. Wal-Mart Stores, Inc., et al.*, 201 F.3d 335, 341 (4th Cir. 2000); *Tortora v. Hartford Life and Accident Ins. Co.*, 162 F.Supp.3d 520, 524 (D.S.C. 2016)*; see also Shipley v. Arkansas Blue Cross & Blue Shield*, 333 F.3d 898, 902 (8th Cir. 2003) (conducting an abuse of discretion review for the review of an ERISA plan enrollment form).

Both the *Williams* case and the *Tortora* case involved the denial of benefits under a disability plan. The Fourth Circuit specifically held in the *Williams* case that the abuse of discretion standard of review was required in reviewing the administrator's denial of benefits because the plan was governed by ERISA. *Williams*, 609 F.3d at 629-30. As such, under the abuse of discretion standard of review, the decision of the administrator will be upheld so long as it was reasonable. *Id.*; *Tortora* 162 F.Supp.3d at 524. Generally, this Court's review is limited to the administrative record when the benefits determination is reviewed under the abuse of discretion standard. *Helton*, 709 F.3d at 352 (citing *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994)).

***Entitlement to LTD Benefits***

In conducting an abuse of discretion review, the Fourth Circuit has recognized eight nonexclusive factors that a court may consider in reviewing a denial of ERISA benefits. *See Champion*, 550 F.3d at 359. These factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principle; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* (quoting *Booth*, 201 F.3d at 342–43). "The above factors continue to guide . . . abuse-of-discretion review under ERISA." *Williams*, 609 F.3d at 630.

As claims fiduciary for the Plan, MetLife is obligated to Plan participants to follow the written terms and conditions of the Plan in reviewing disability claims. *See* 29 U.S.C. § 1104(a)(1)(D); *Pegram v. Herdrich*, 530 U.S. 211, 223-24 (2000); *Morse v. N.Y. State Teamsters Conference Pension & Ret. Fund*, 580 F.Supp. 180, 186 (W.D.N.Y. 1983). Furthermore, a plan administrator has the duty to consistently apply the terms of a plan as part of its fiduciary duty to all plan participants and cannot apply them inconsistently based upon each individual case. *Scipio v. United Bankshares, Inc.*, 119 F. App'x 431, 436–37 (4th Cir. Dec. 22, 2004) (the court reviewing a plan administrator's decision considers, in part, whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan); *Can. Life Assur. Co. v. Estate of Lebowitz*, 185 F.3d 231, 238 (4th Cir. 1999) ("A plan administrator must administer the provisions of a policy 'consistently.'"); *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d

120, 126 (4th Cir. 1994) (plan administrator must apply the terms of a plan consistently to members suffering from the same or similar ailments). The question before the Court is whether Holder was enrolled in the LTD Plan and, therefore, eligible to apply for and receive LTD benefits under the Plan. ECF No. 15 ¶ 7. In reaching this decision, the Court will consider the administrative record and memoranda submitted by the parties.

The Plan sets forth several requirements that a claimant must satisfy in order to enroll in LTD coverage.

> LTD Plan coverage provides you protection during . . . extended absences.
> . . . You pay the cost of LTD Plan benefits through payroll deductions with after-tax contributions. If you choose not to enroll when you are first eligible and later decide to enroll, proof of good health is required.

ECF No. 15-10 at 217. Holder does not dispute that she did not enroll in LTD coverage when she was first eligible. *See* ECF No. 16 at 2. Therefore, under the SPD, two things need to occur for LTD coverage if a participant does not enroll when first eligible: (1) MetLife's approval of the participant's Statement of Health; and (2) that participant's first contribution for coverage. ECF No. 15-10 at 217.

MetLife asserts it never made a claims determination for LTD benefits because Holder was never enrolled in the Plan for LTD coverage. ECF No. 16 at 8. The SPD provides that LTD coverage goes into effect after: (1) MetLife approves a participant's SOH; and (2) the participant's first contribution for coverage. ECF No. 15-10 at 51. A plan participant must meet conditions precedent before an insurance policy goes into effect. *See N. Am. Co. for Life & Health Ins. v. Hoh*, 334 F. App'x 586, 588 (4th Cir. June 18, 2009) (finding insurance policy did not take effect because insured did not meet conditions precedent).

Notwithstanding the LTD approval letter on February 8, 2018, Holder never made her first contribution for LTD coverage.  The administrative record is devoid of any evidence that Holder made a contribution payment for LTD coverage.  Accordingly, Holder did not meet the conditions precedent for LTD coverage under the terms of the Plan.  *See Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 680 (7th Cir. 2002) ("After reviewing the . . . Plan documents, we believe that the documents clearly and unambiguously require an employee to enroll before the employee becomes eligible for medical benefits.").  Holder did not meet the conditions precedent for enrollment for LTD coverage under the Plan.

Moreover, Holder never had a SOH approved for LTD coverage.  Beyond the dispute regarding coverage resulting from the November 27, 2017, application and whether misrepresentations were made in the application or coverage was approved in the February 18, 2018, letter, Holder was given an opportunity to acquire coverage retroactive to January 2019 upon submission and approval of a new SOH.  It was not approved and there is no abuse of discretion in its disapproval given her acknowledged medical history.

Furthermore, Holder acknowledges she did not make a claim for LTD benefits as required by the Plan.  *See* ECF No. 19 at 2.  The SPD provides as follows:

> You should file LTD Plan claim as soon as you become disabled.  Do not wait until your sick pay is used up or until your four-month elimination period expires – file your claim immediately.  The latest you can file your LTD Plan claim is one year after your disability began.  If you file your disability claim beyond this one-year deadline, your claim will not be accepted and you will not be eligible for LTD Plan benefits.

ECF No. 15-10 at 223.  Holder asserts she became disabled on March 13, 2019.  ECF No. 17 at 1.  There is no claim form for LTD benefits in the administrative record.  Holder

does not dispute that she failed to make a claim for LTD benefits within one year of the date her disability began. As a result, under the terms of the Plan, Holder is not eligible for LTD Plan benefits.

MetLife's decision to deny LTD benefits was supported by the language of the SPD and the evidence known to MetLife when the decision was made. *See Donnell v. Metro. Life Ins. Co.*, 165 F. App'x 288, 294 (4th Cir. 2006) ("As we have noted, judicial review of the reasonableness of [the Plan administrator's] decision is limited to the body of evidence before the administrator at the time it rejected [the plaintiff's] claim."). MetLife's decision to deny Holder LTD coverage was reasoned and principled. MetLife's decisionmaking process included thorough consideration of the materials submitted by Holder, kept her informed of the status of her request for LTD benefits, notified her of its decision to deny LTD coverage, and notified her of its decision to uphold denial on appeal. *See id.* at 295 (finding similar decisionmaking process to be "deliberate and principled"). MetLife followed a principled and reasoned process for its decision to deny Holder LTD benefits based on the administrative record and the Plan language.

> Where an ERISA administrator rejects a claim to benefits on the strength of substantial evidence, careful and coherent reasoning, faithful adherence to the letter of ERISA and the language in the plan, and a fair and searching process, there can be no abuse of discretion—even if another, and arguably a better, decision-maker might have come to a different, and arguably a better, result.

*Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 325–26 (4th Cir. 2008). MetLife denied Holder LTD benefits because she was not enrolled for LTD coverage under the Plan.

The Court finds there is nothing within the record to support Holder's claim that she is entitled to LTD benefits. There is nothing within the administrative record to

12

demonstrate that MetLife's decision was anything but reasonable. Because there is substantial evidence in the administrative record to support MetLife's decision, the decision was not an abuse of discretion.

## CONCLUSION

For the reasons set forth above, the Court concludes that the evidence in the record does not support long-term disability coverage under the terms of the American Airlines, Inc. Long-Term Disability Plan. It is therefore

**ORDERED** that MetLife's decision denying long-term disability benefits is affirmed.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

September 20, 2022
Spartanburg, South Carolina

13